144 F.3d 212
 Neil JEAN-BAPTISTE, Gustavo Enrique Cepeda-Torres, and
Victor Israel Santana, on behalf of themselves and
all others similarly situated,
Plaintiffs-Appellants,
v.
Janet RENO, Attorney General of the United States of
America, and Immigration and Naturalization
Service, Defendants-Appellees.
 Docket 97-6062.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 18, 1997.
Decided May 8, 1998.
 
 Eladio A. Torres, New York City (Antonio C. Martinez, Law Office of Dr. Antonio C. Martinez, New York City, of counsel), for Plaintiffs-Appellants.
 Quynh Vu, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Civil Div., William J. Howard, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Depart. of Justice, Washington, DC; Zachary W. Carter, U.S. Atty., Mary Elizabeth Delli-Pizzi, Special Asst. U.S. Atty., Eastern District of New York, Brooklyn, NY, of counsel), for DefendantsAppellees.
 Before: KEARSE, CARDAMONE, Circuit Judges, and LEISURE*, District Judge.
 CARDAMONE, Circuit Judge:
 
 
 1
 Plaintiffs Neil Jean-Baptiste, Gustavo Enrique Cepeda-Torres, and Victor Israel Santana appeal from a judgment of the United States District Court for the Eastern District of New York (Johnson, J.), entered February 27, 1997, granting the motion of defendants Janet Reno, Attorney General of the United States, and the United States Immigration and Naturalization Service (INS) to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 2
 All three of the plaintiffs in this case are aliens who have been granted permanent residency in the United States. The INS ordered their deportation following their criminal convictions for drug offenses. Plaintiffs commenced the present suit in the district court challenging the deportation procedures followed by the INS under recently-enacted immigration laws. They alleged that those procedures violated their Fifth Amendment rights to due process.
 
 
 3
 It is true that the immigration laws appear at times to be a monstrous legislative morass, difficult to track and even more difficult to comprehend. Nonetheless, insofar as we can determine, Congress has removed from the jurisdiction of federal courts authority to entertain and decide the sort of action plaintiffs have instituted. Accordingly, we must affirm the district court's dismissal of the plaintiffs' claims.
 
 BACKGROUND
 The Plaintiffs
 
 4
 Plaintiff Neil Jean-Baptiste is a 27-year-old national of Haiti who became a legal permanent resident of the United States in 1972 at the age of two. In 1989, after pleading guilty, he was convicted in New York state court for criminal possession of a controlled substance in violation of N.Y. Penal Law § 220.18 (McKinney 1989 & Supp.1998). Based on this conviction, the Immigration Court ordered him deported on August 9, 1996 pursuant to §§ 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the Immigration and Naturalization Act (INA). See 8 U.S.C. §§ 1251(a)(2)(B)(i); 1251(a)(2)(A)(iii) (1994).
 
 
 5
 Plaintiff Gustavo Enrique Cepeda-Torres is a 23-year-old national of Colombia who became a lawful permanent resident of the United States in 1982 at the age of eight. In 1995 he pled guilty and was convicted in New York state court of the criminal sale of a controlled substance in violation of N.Y. Penal Law § 220.31 (McKinney 1989). Like Jean-Baptiste, he was ordered deported in 1996, pursuant to §§ 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA.
 
 
 6
 Plaintiff Victor Israel Santana, a 36-year-old national of the Dominican Republic, entered the United States in 1989 as a conditional permanent resident. He too was convicted in 1995 in New York state court of the criminal sale of a controlled substance in violation of N.Y. Penal Law § 220.39 (McKinney 1989 & Supp.1998) and was ordered deported based on that conviction by the Immigration Court in 1996. Plaintiffs' appeals to the Board of Immigration Appeals (BIA) from their deportation orders were dismissed.
 
 The Relevant Statutory Scheme
 
 7
 The Immigration Court ordered plaintiffs deported pursuant to §§ 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA. Section 241(a)(2)(B)(i), now codified at 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. II 1996), stated at the relevant time that "[a]ny alien who at any time after entry has been convicted of a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable." Section 241(a)(2)(A)(iii), codified at 8 U.S.C. § 1251(a)(2)(A)(iii) (Supp. II 1996), then provided that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable." There is no requirement in the INA that legal aliens granted permanent residency in the United States be given notice that they could lose such status were they to be convicted of committing these crimes. Nor were any of the plaintiffs, in fact, given such notice.
 
 The Decision Below
 
 8
 Plaintiffs filed a proposed class action suit in the Eastern District before Judge Sterling Johnson, Jr. on August 19, 1996, challenging the procedures employed by the INS with respect to their deportations. They alleged that they, lawful permanent residents who have been convicted of certain criminal acts after their entry and grant of permanent resident status, were entitled to notice that engaging in criminal behavior could subject them to consequences under the immigration laws. They asserted that this lack of notice violates their constitutional rights under the Fifth Amendment's guarantee of due process. Because they had not received such notice, they argued that the INS should be enjoined from enforcing the deportation orders that have been filed against them. In response defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6), but agreed not to deport appellants until the dismissal motion was judicially resolved.1. Lack of Jurisdiction
 
 
 9
 Regarding the lack of jurisdiction claim, defendants asserted that INA § 242(g), codified at 8 U.S.C. § 1252(g) (Supp. II 1996), divested the district court of jurisdiction over the case. Section 242(g) states
 
 
 10
 Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].
 
 
 11
 Section 242(g) was enacted on September 30, 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Immigration Reform Act), Pub.L. No. 104-208, 110 Stat. 3009 (1996). That Act was the second of two signed into law in 1996 that substantially curtailed federal courts' jurisdiction over claims raised by aliens in deportation proceedings. The first was the Antiterrorism and Effective Death Penalty Act of 1996 (Antiterrorism Act), Pub.L. No. 104-132, 110 Stat. 1214 (1996), signed into law five months earlier on April 24, 1996.
 
 
 12
 Prior to the passage of the Antiterrorism Act, resident aliens facing deportation could seek federal judicial review under INA § 106(a)(10), which provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10) (1994) (amended 1996 and repealed 1996). Section 440(a) of the Antiterrorism Act, Pub.L. No. 104-132 at 440(a), 110 Stat. 1214, 1276-77 (1996) (hereinafter Antiterrorism Act § 440(a)), however, amended the text of INA § 106(a)(10) in April of 1996 and significantly withdrew federal jurisdiction over claims brought by aliens who have been ordered deported because of convictions for specified offenses. It read as follows
 
 
 13
 (10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court.
 
 
 14
 Antiterrorism Act § 440(a). The Immigration Reform Act repealed the amended § 106(a)(10) five months later, but enacted similar language in the new INA § 242(a)(2)(C). See 8 U.S.C. §§ 1105a & 1252(a)(2)(C) (Supp. II 1996).
 
 
 15
 Although the Immigration Reform Act specifically provided that its amendments to the INA would take effect on April 1, 1997, the general effective date of the Act, see Pub.L. No. 104-208, § 309(a), 110 Stat. 3009, 3009-625 (1996) (hereinafter Immigration Reform Act § 309(a)), it also stated that INA § 242(g) "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." Pub.L. No. 104-208, § 306(c)(1), 110 Stat. 3009, 3009-612 (1996) (hereinafter Immigration Reform Act § 306(c)(1)). The defendants argued that this provision meant the district court was divested of jurisdiction as of September 30, 1996, the date the Immigration Reform Act was enacted. The district court disagreed and held that § 242(g) would become effective on April 1, 1997, as provided by Immigration Reform Act § 309(a). See Jean-Baptiste v. Reno, No. 96 CV 4077, 1997 WL 55472, at * 3 (E.D.N.Y. Feb. 5, 1997). Thus, because the district court rendered its decision on February 5, 1997, prior to the Immigration Reform Act's April 1, 1997 effective date, it determined that § 242(g) did not divest it of subject matter jurisdiction. See id. Without § 242's impediment, it ruled that it had federal question jurisdiction under 28 U.S.C. § 1331. See id.
 
 
 16
 at * 4.
 
 2. Failure to State a Claim
 
 17
 With respect to the merits of the case, plaintiffs' "collateral attack" on the manner in which the defendants administer the deportation process against lawful permanent residents, the district court judge agreed with the defendants that plaintiffs had failed to state a claim. It observed that even though legal permanent residents are not informed that certain kinds of convictions might cause their deportation, such a lack of warning did not violate the Constitution or the Administrative Procedure Act, even under those circumstances where, as here, the resident alien pled guilty to the crimes. See id.
 
 
 18
 Further, the district court held that the duty to inform legal permanent residents that they could be deported as a result of certain criminal convictions, if there indeed were one, was satisfied by the provisions of the INA, which clearly state that aliens convicted of certain crimes are deportable. See id. As such, the court continued, plaintiffs' own ignorance of this law could not form a basis for challenging the deportation procedures used against them. See id. The trial court noted that the INS met due process requirements here because the plaintiffs had received notice of their deportation pursuant to the order to show cause filed by the INS. Hence, the district court dismissed plaintiffs' case under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. See id. Plaintiffs appeal this dismissal.
 
 DISCUSSION
 
 19
 The district court, in determining that the effective date of INA § 242(g) was April 1, 1997, also stated that Immigration Reform Act § 306(c)(1) makes the provision explicitly retroactive so as to apply to cases pending on the September 30, 1996 enactment date of the Act. See Jean-Baptiste, 1997 WL 55472, at * 3 (citing Lalani v. Perryman, 105 F.3d 334, 336 (7th Cir.1997) (per curiam)). The question raised on appeal is whether federal courts have jurisdiction over the plaintiffs' case now that the April 1, 1997 date has passed.
 
 
 20
 The Effect of § 242(g) on Courts' Jurisdiction as
 
 Interpreted by Other Circuits
 
 21
 Other federal courts of appeals have already grappled with this question and, at least on the basis of the facts in the individual cases, come to different conclusions. The first case decided on § 242(g) was Ramallo v. Reno, 114 F.3d 1210 (D.C.Cir.1997), petition for cert. filed, 66 U.S.L.W. 3264 (U.S. Sept. 24, 1997) (No. 97-526). It concerned an alien, Marlena Ramallo, who sought to prevent her deportation by attempting to enforce in court an agreement she had made with the government regarding her immigration status. Ramallo claimed that the government agreed not to deport her and to restore her as a lawful permanent resident in exchange for her cooperation in prosecuting drug traffickers and her waiver of objections to her deportability. See id. at 1211. When the INS later obtained and attempted to execute a deportation order, Ramallo filed suit in the district court for the District of Columbia, seeking to enforce the agreement. See id. at 1212. The district court entered judgment in favor of Ramallo on July 23, 1996. See id. at 1213.
 
 
 22
 After the district court rendered its judgment, however, Congress enacted the Immigration Reform Act. Thus, on appeal, the D.C. Circuit had to consider that statute's effect on Ramallo's case. It concluded that the revised § 242(g) stripped it of jurisdiction to decide the appeal because the action had arisen from the decision or action of the Attorney General to execute a removal order against Ramallo. See id. at 1213 (holding that the "[Immigration Reform Act] now indisputably deprives both courts of appeals and district courts of jurisdiction to decide the instant action"). The Circuit Court asserted jurisdiction over the case for the limited purpose of vacating the district court decision and remanding with instructions to dismiss, stating: "[G]iven the firm command of 8 U.S.C. § 1252(g), we believe that Congress intended to afford this court residual jurisdiction to clear the decks of cases in which the District Court has entered judgment, but in which there can be no review by the Court of Appeals due to its lack of jurisdiction pursuant to [the new law]." Id. (emphasis added).
 
 
 23
 The next case was Auguste v. Attorney General, 118 F.3d 723 (11th Cir.1997). There the Eleventh Circuit reviewed the effect of § 242(g) on a French citizen's attempt to stay his deportation on the basis of his failure to make a "knowing and intelligent" waiver of his right to a deportation hearing. Auguste had signed a waiver form pursuant to the Visa Waiver Pilot Program, 8 U.S.C. § 1187 (1994), under which certain aliens may enter the United States without a visa for up to 90 days if they waive their right to contest any action for deportation (other than on the basis of an asylum application) against them. See id. at 724. When Auguste remained in the United States beyond the 90-day period, the INS issued an order of deportation without holding a hearing. See id. The district court agreed that Auguste's waiver had not been knowing and intelligent, granted a stay of deportation, and ordered that formal deportation proceedings be conducted. See id. at 724-25.
 
 
 24
 On appeal, the Eleventh Circuit ruled that Auguste's petition for habeas corpus had been filed pursuant to the old § 106 of the INA. See id. at 725. Since the Immigration Reform Act had repealed that section of the INA and replaced it with new § 242 during the intervening time period, the appellate court concluded that it did not have jurisdiction over Auguste's case. See id. at 725-26. It followed the result of Ramallo, stating that although it lacked jurisdiction over the appeal, it retained residual jurisdiction over Auguste's case in order to vacate the district court's judgment and remanded with instructions to dismiss. See id. at 727.
 
 
 25
 In American-Arab Anti-Discrimination Committee v. Reno, 119 F.3d 1367 (9th Cir.), reh'g denied, 132 F.3d 531 (9th Cir.1997), cert. granted in part, --- U.S. ----, 118 S.Ct. 2059, 141 L.Ed.2d 137 (1998), the Ninth Circuit, apparently on the basis of facts unique to that case, came to a different conclusion than the two circuit cases just discussed. The Ninth Circuit case concerned deportation proceedings pursuant to 8 U.S.C. § 1251(a)(4)(B) (1994) against two permanent resident aliens affiliated with the Popular Front for the Liberation of Palestine for their alleged terrorist activity. See id. at 1370. They filed an action to contest the deportation proceedings, declaring that the INS singled them out for selective enforcement of the immigration laws in retaliation for their associational activity protected under the First Amendment. See id. The district court entered an injunction staying the deportation proceedings. See id. The government appealed from the injunction, asserting, among other claims, that the subsequent enactment of § 242(g) retroactively divested the district court of jurisdiction over the matter. See id. at 1371.
 
 
 26
 The Ninth Circuit disagreed, stating that even though § 242(g) applied retroactively to cases pending on the Immigration Reform Act's April 1, 1997 effective date, such did not end the discussion regarding whether it had jurisdiction to consider the aliens' First Amendment claims. See id. at 1372. It pointed to the section's introductory phrase, "except as provided in this [new] section, [8 U.S.C. § 1252]," and concluded that the provision expressly incorporates certain exceptions from 8 U.S.C. § 1252 when § 242(g) applies to pending cases. See id. Were the court to interpret § 242(g) as precluding all judicial review of aliens' colorable constitutional claims, such as the plaintiffs' First Amendment claims, the Ninth Circuit continued, "serious constitutional question[s] ... would arise." See id. (quoting Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988)).
 
 
 27
 The Ninth Circuit proceeded to discuss which provisions of 8 U.S.C. § 1252 are incorporated by reference into § 242(g). In particular, it looked at 8 U.S.C. § 1252(f), which limits a court's authority to enjoin the operation of INA provisions related to entry and exclusion, other than with respect to their application to an "individual alien" against whom proceedings under such provisions have been initiated. The court held that § 1252(f) allowed federal jurisdiction over the aliens' pending First Amendment claims. See id. at 1372-73.
 
 
 28
 In Ramallo, the D.C. Circuit had held that it did not need to decide whether § 242(g) posed such constitutional problems because it determined that habeas review was available to the plaintiff in that case to raise whatever constitutional questions were implicated. See 114 F.3d at 1214. The Eleventh Circuit in Auguste also implied that habeas was available, in theory, to the plaintiff in that case, but found that it was "difficult to imagine a court granting the Great Writ under these circumstances." 118 F.3d at 726-27 n. 7. In American-Arab Anti-Discrimination Committee, the Ninth Circuit found, to the contrary, that review of the final order of deportation by habeas corpus did not offer adequate redress for the plaintiffs' claimed constitutional injuries. See 119 F.3d at 1374. It recognized that other courts--for example, the D.C. Circuit in Ramallo--had relied on the likely availability of habeas to preserve the constitutionality of the jurisdiction-narrowing provisions of § 242(g), but determined that the possibility of habeas review did not provide plaintiffs with sufficient redress. See id. The rationale for the Ninth Circuit's holding was that violation of the plaintiffs' First Amendment rights would injure them in a way that could not be vindicated by any post-deprivation remedies. See id.
 
 The Effect of § 242(g) in this Case
 
 29
 With the legislation and case law construing it in mind, we turn to the matter before us. We read amended § 242 to divest this Court and the district court of jurisdiction to decide these plaintiffs' claims. The claims were made "by or on behalf of [aliens] arising from the decision of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" against them, just as those made in Ramallo and Auguste. Congress in this statute has terminated the jurisdiction of federal courts to hear this sort of appeal. We are precluded therefore from entertaining or deciding it.
 
 
 30
 In holding that § 242(g) divests us and the district court of jurisdiction over plaintiffs' claims, we recognize the plenary power Congress has in the immigration field. As the Supreme Court noted
 
 
 31
 [T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.... [O]ver no conceivable subject is the legislative power of Congress more complete.... Thus, in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens.
 
 
 32
 Reno v. Flores, 507 U.S. 292, 305, 113 S.Ct. 1439, 1448-49, 123 L.Ed.2d 1 (1993). Congress amended § 242 in the Immigration Reform Act with broad language in order to "expedit[e] the removal of excludable and deportable aliens, especially criminal aliens." Immigration Control & Financial Responsibility Act of 1996, S.Rep. No. 104-249, at 2 (1996). We are compelled to comply with that mandate.
 
 The Availability of 28 U.S.C. § 2241
 Habeas Review After the Enactment of the
 Immigration Reform Act
 
 33
 As we dismiss plaintiffs' claims for lack of jurisdiction, we must give thought to whether a statute that eliminates on jurisdictional grounds review of such a constitutional challenge passes constitutional muster itself. See Webster v. Doe, 486 U.S. at 603, 108 S.Ct. at 2053 ("[S]erious constitutional question[s] ... would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."). But, as our sister circuits concluded, all review has not been eliminated. Because habeas corpus remains available, the Immigration Reform Act suffers from no constitutional infirmity.
 
 
 34
 The Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2. In addition, § 2241 of Title 28 of the U.S.Code empowers Supreme Court Justices and circuit and district court judges to grant a writ of habeas corpus to an individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (1994). Moreover, the availability of habeas to challenge deportation orders has long been recognized. See Heikkila v. Barber, 345 U.S. 229, 234-35, 73 S.Ct. 603, 605-06, 97 L.Ed. 972 (1953) (acknowledging that congressional efforts to restrict judicial review of aliens' deportation orders had been successful, but recognizing at the same time the continued viability of habeas corpus review); Orozco v. INS, 911 F.2d 539, 541 (11th Cir.1990) ("Challenges to deportation proceedings are cognizable under 28 U.S.C. § 2241."); Yesil v. Reno, 958 F.Supp. 828, 838-39 (S.D.N.Y.1997) (discussing Heikkila and stating that "the Supreme Court has made it clear that Congress cannot eliminate habeas corpus review over final deportation orders unless there is some alternative avenue for review").
 
 
 35
 Nothing in the language of either the Antiterrorism Act or the Immigration Reform Act suggests that Congress expressly repealed § 2241, limited its scope, or eliminated the jurisdiction of the district courts under that statute to entertain petitions seeking writs of habeas corpus. Those two Acts therefore do not specifically exclude habeas review in deportation cases under § 2241, and repeal by implication of the right to petition for habeas corpus relief is disfavored. See Felker v. Turpin, 518 U.S. 651, 659-61, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (discussing Ex Parte Yerger, 75 U.S. 85, 8 Wall. 85, 105, 19 L.Ed. 332 (1868), and upholding the Supreme Court's authority to entertain a petition for a writ of habeas corpus). Thus, in the absence of language affirmatively and clearly eliminating habeas review, we presume Congress did not aim to bar federal courts' habeas jurisdiction pursuant to § 2241.
 
 
 36
 Further, we heretofore have recognized the need for some judicial review of aliens' constitutional challenges in Hincapie-Nieto v. INS, 92 F.3d 27, 31 (2d Cir.1996). There, in determining whether § 440(a) of the Antiterrorism Act and its elimination of jurisdiction over petitions to review final orders of deportation was sustainable, we stated that "[s]ince the Government acknowledges that at least some avenue for judicial relief remains available, we see no infirmity in the repeal of our prior jurisdiction to entertain Hincapie-Nieto's petition for review of his deportation order." Id. Our opinion in Garay v. Slattery, 23 F.3d 744, 745 (2d Cir.1994), should not be read as foreclosing § 2241 habeas relief because Garay was decided based upon specific provisions of the INA--subsections of 8 U.S.C. § 1105a(a) that made review under them the "sole and exclusive procedure"--that have since been repealed and hence no longer apply.
 
 
 37
 Even though Congress exercises broad power over immigration matters, the Supreme Court has ruled that aliens who have established permanent residency in this country are entitled to assert their constitutional rights. See INS v. Chadha, 462 U.S. 919, 940-41, 103 S.Ct. 2764, 2778-79, 77 L.Ed.2d 317 (1983) (" 'Congress has plenary authority in all cases in which it has substantive legislative jurisdiction, ... so long as the exercise of that authority does not offend some other constitutional restriction.' ") (quoting Buckley v. Valeo, 424 U.S. 1, 132, 96 S.Ct. 612, 688, 46 L.Ed.2d 659 (1976)); Landon v. Plasencia, 459 U.S. 21, 32-33, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) ("[A] continuously present resident alien is entitled to a fair hearing when threatened with deportation, ... and, although we have only rarely held that the procedures provided by the executive were inadequate, we developed the rule that a continuously present permanent resident alien has a right to due process in such a situation."). Without the ability to seek a writ of habeas corpus under § 2241, certain lawful permanent residents subject to deportation orders would have no opportunity to address potentially serious constitutional issues.
 
 
 38
 Defendants argue that the Immigration Reform Act does not deprive an individual of a forum in which to adjudicate his or her constitutional rights, but rather removes district court jurisdiction over deportation matters and channels such actions directly to the courts of appeals. The courts of appeals did have jurisdiction over individual orders of deportation under INA § 106(a), 8 U.S.C. § 1105a(a), but Congress eliminated such review for individuals found deportable for certain criminal convictions in Antiterrorism Act § 440(a). As discussed above, we subsequently upheld § 440(a)'s elimination of courts of appeals' jurisdiction over petitions to review final orders of deportation in Hincapie-Nieto, 92 F.3d at 31. The INA, as amended by the Immigration Reform Act, does provide for judicial review of some aliens' deportation orders by courts of appeals in 8 U.S.C. § 1252(a)(1), but that review is taken away by the Act's transitional rule § 309(c)(4)(G), Pub.L. No. 104-208, § 309(c)(4)(G), 110 Stat. 3009, 3009-626-27 (1996), and its permanent counterpart, 8 U.S.C. § 1252(a)(2)(C), for aliens convicted of certain criminal offenses, such as plaintiffs here. See Mayers v. Reno, 977 F.Supp. 1457, 1460-61 (S.D.Fla.1997) ("Pursuant to [Immigration Reform Act] section 309(c)(4)(G), the petitioner's conviction of an aggravated felony will likely bar him from raising his claim even before the Eleventh Circuit Court of Appeals."). Accordingly, defendants' arguments regarding review by courts of appeals are not well taken, being based on a misapprehension of the statutes. See Ozoanya v. Reno, 968 F.Supp. 1, 5-6 (D.D.C.1997) ("By their terms, of course, both section 440(a) of the [Antiterrorism Act] and section 306(a)(2) of the [Immigration Reform Act] bar review 'by any court' of a final deportation order against an alien who has been found deportable because of his conviction of certain enumerated crimes.... Nothing in those sections suggests that a court of appeals would have jurisdiction to entertain claims made by someone in petitioner's shoes--even for constitutional claims--any more than would a district court.").
 
 
 39
 In sum, we join other courts in holding that § 2241 habeas review survives the amendments to the INA enacted by the Immigration Reform Act. See Ramallo, 114 F.3d at 1214 ("[A]s the government concedes, habeas review remains available to appellee to raise substantial constitutional questions."); Mojica v. Reno, 970 F.Supp. 130, 157-163 (E.D.N.Y.1997) ("While the amendments manifest Congress's desire to streamline the deportation process, [the two Acts] leave undisturbed the independent authority of federal district courts to entertain habeas petitions under section 2241 of Title 28."); Ozoanya, 968 F.Supp. at 7 (permitting habeas corpus review of deportation orders despite the passage of § 242(g)). But, in finding that § 2241 habeas review remains available for aliens deemed deportable under certain circumstances to raise constitutional questions, we express no opinion on the permissible scope of that review. See, e.g., Mojica, 970 F.Supp. at 163 (discussing district courts' narrowing the scope of § 2241 jurisdiction in the context of challenges to deportation orders).
 
 
 40
 Whatever the permissible scope of review, we do not believe this case implicates the jurisdiction of the federal courts under § 2241. Plaintiffs sought federal question jurisdiction under 28 U.S.C. § 1331, not habeas jurisdiction under 28 U.S.C. § 2241. INA § 242(g) deprives us and the district court of such jurisdiction.
 
 
 41
 As a consequence, we, as our sister circuits, assert residual jurisdiction over the plaintiffs' claims in order to affirm the district court's judgment dismissing this case, although such dismissal should have been under Fed.R.Civ.P. 12(b)(1) (lack of jurisdiction) instead of Fed.R.Civ.P. 12(b)(6) (failure to state a claim upon which relief can be granted).
 
 CONCLUSION
 
 42
 For the foregoing reasons, we affirm the district court's judgment insofar as it dismisses plaintiffs' claims, but we do so pursuant to Fed.R.Civ.P. 12(b)(1) rather than Fed.R.Civ.P. 12(b)(6).
 
 
 
 *
 Hon. Peter K. Leisure, Senior Judge, United States District Court for the Southern District of New York, sitting by designation