**Nour–Eddine JAAFAR, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION, Respondent.**

No. 99–CV–6257L.

United States District Court,
W.D. New York.

Nov. 12, 1999.

James W. Grable, Special Assistant U.S. Attorney, Immigration & Naturalization Service, Buffalo, NY, for Immigration & Naturalization.

### DECISION AND ORDER

LARIMER, Chief Judge.

Petitioner, Nour–Eddine Jaafar, appearing *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 1141. Jaafar, a citizen of Morocco who is confined in Buffalo Federal Detention Facility in Batavia, New York, seeks relief from a final order of removal issued by an Immigration Judge ("IJ") on December 7, 1998.

### SUBJECT MATTER JURISDICTION

Respondent Immigration and Naturalization Service ("INS") contends that this court lacks jurisdiction to hear Jaafar's claims, based on certain recently amended sections of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* Jaafar's removal proceedings commenced in February 1998. *See* Administrative Record ("A.R.") at 199–202, 266–68. This case is therefore governed by the Illegal Immigration Reform and Immi-

grant Responsibility Act of 1996 ("IIRI-RA"), which amended INA in a number of respects. As amended, INA now provides that "[j]udicial review of a final order of removal ... is governed only by chapter 158 of title 28 of the United States Code [28 U.S.C. §§ 2341 *et seq.*], except as provided in subsection (b) ...." 8 U.S.C. § 1252(a)(1). Subsection (b)(2) of § 1252 provides that "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." In addition, chapter 158 of Title 28 confers upon the courts of appeals exclusive jurisdiction to review certain final administrative orders.

Although INS's position is not an unreasonable one given the language of the relevant statutes, I am not convinced that the Court of Appeals for the Second Circuit would agree that this court lacks jurisdiction to hear petitioner's claims under § 2241. In *Jean–Baptiste v. Reno*, 144 F.3d 212, 220 (2d Cir.1998), the Second Circuit held that "§ 2241 habeas review survives the [1996] amendments to the INA ...," though the court "express[ed] no opinion on the permissible scope of that review." Although another panel of the Court of Appeals later criticized that holding, *see Henderson v. I.N.S.*, 157 F.3d 106, 119 n. 9 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999), that panel nevertheless recognized *Jean–Baptiste* as binding precedent. The court in *Henderson* concluded that "the federal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* at 122 (quoting 28 U.S.C. § 2241).

INS contends that *Henderson* does not apply to this case, because the petitioners in *Henderson* were subject to IIRIRA's "transitional" rules governing immigration proceedings initiated prior to April 1, 1997, in which a final order was filed after Octo-

ber 30, 1996. Although INS's explanation of the significance of this distinction is sparse, INS appears to contend that the court in *Henderson* was concerned with the possibility that the transitional rules might deprive the federal courts of *any* jurisdiction to hear challenges to final orders of deportation, since the review procedure made available by the permanent rules under § 1252(b)(2) does not apply to transitional cases. The transitional § 309(c)(4)(G) provided instead that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain criminal offenses.

The court in *Henderson* did state that its "decision [wa]s premised on the notion that § 2241 habeas is constitutionally required only where the immigration laws have been interpreted to bar other forms of judicial review." *Id.* at 122 n. 15. Arguably, then, one could read *Henderson* as not requiring § 2241 jurisdiction in cases where review in the court of appeals is available under § 1252(b)(2).

Absent a clear statement to that effect by the Second Circuit, however, I am not prepared to conclude that the availability of relief in the Court of Appeals means that this court lacks habeas jurisdiction under § 2241. The Second Circuit has cautioned against construing statutes as repealing by implication the right to petition for habeas corpus relief, stating that "in the absence of language affirmatively and eliminating habeas review," courts should presume that Congress did not intend to strip federal courts of their habeas jurisdiction under § 2241. *Jean–Baptiste,* 144 F.3d at 219 (citing *Felker v. Turpin,* 518 U.S. 651, 659–61, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)).

I also note that at least one district judge from within this circuit has rejected INS's contention that footnote 15 in *Henderson* implies that habeas jurisdiction under § 2241 is available only where there is *no* other form of judicial relief available, and that the right to appeal to the Court of

Appeals under § 1252(b)(2) therefore bars relief under § 2241. *See Webb v. Weiss,* 69 F.Supp.2d 335, 336 (D.Conn.1999). The court in *Webb* stated that it "d[id] not read *Henderson* as precluding all § 2241 habeas relief simply because a right of appeal exists . . . ." *Id.* In addition, although not squarely addressing the issue, other district judges from within this circuit have found § 2241 jurisdiction to exist under the permanent rules. *See Dunbar v. INS,* 64 F.Supp.2d 47, 49–51 (D.Conn.1999) (removal proceedings commenced on April 10, 1997); *Ncube v. INS Dist. Directors and Agents,* No. 98 Civ. 0282, 1998 WL 842349 at *5 (S.D.N.Y. Dec.2, 1998) (stating that "the result here would be the same under the transitional as well as the permanent rules").

I am also not persuaded by respondent's reliance on *Reno v. American–Arab Anti–Discrimination Committee* ("*AADC*"), 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). INS cites the Supreme Court's characterization of § 1252(b)(9) as a " 'zipper' clause" that "channels judicial review of all" INS decisions and actions to the courts of appeals. The Court in *AADC,* however, did not address whether § 1252(b)(9) was intended to abolish habeas jurisdiction under § 2241. In fact, though recognizing "disagreement on this point in the Courts of Appeals," *id.* 119 S.Ct. at 942 n. 7, the Court made no attempt to resolve the issue. *See Kiareldeen v. Reno,* 71 F.Supp.2d 402, 405 (D.N.J.1999); *Dunbar,* 64 F.Supp.2d at 49; *Mendoza–Guerra v. Reno,* No. C 99–0879, 1999 WL 360748 *4 n. 5 (N.D.Cal. June 1, 1999). I do not believe that *AADC* is controlling in this case, therefore, and I conclude that this court does have subject matter jurisdiction under § 2241.

### FACTUAL BACKGROUND

In his petition, Jaafar states that he passed a naturalization examination on February 10, 1994. He was scheduled to take the oath of citizenship on June 14, 1994, but was unable to do so because he

had to travel to Morocco for personal reasons. Upon his return to the United States several months later, he requested a new date for his oath of citizenship, but INS denied his request on January 13, 1995. Jaafar alleges that he filed a request for a hearing on that denial pursuant to 8 U.S.C. § 1447, but INS never scheduled a hearing. Jaafar alleges that these acts and omissions by INS violated his constitutional right to due process of law.

The Administrative Record in this case, however-the accuracy of which petitioner does not challenge-sheds additional light on the underlying facts. Jaafar was originally scheduled to take the oath of citizenship on April 12, 1994, but he failed to appear, and requested a new date. His oath was then rescheduled for June 14, 1994. As stated, Jaafar left for Morocco prior to that date, and remained there until October 1994. In November 1994, Jaafar again traveled to Morocco. A.R. at 222. Upon his return the following month, Jaafar was arrested for possession of marijuana. A.R. at 241. INS then paroled Jaafar into the United States for criminal prosecution. A.R. at 256. He was eventually convicted in New York State Supreme Court of Criminal Possession of Marijuana in the Second Degree in violation of N.Y. Penal L. § 221.25, a class D felony. A.R. at 102. He was sentenced to six months imprisonment. A.R. at 259.

In February 1995, Jaafar was again arrested and later convicted of Criminal Possession of Stolen Property in the Fifth Degree, N.Y. Penal L. § 165.40, a class A misdemeanor, and sentenced to five years probation. A.R. at 260. He was again arrested afterwards on a number of charges, including possession of burglar tools and grand larceny, which were combined in a plea agreement to a single charge of petit larceny, N.Y. Penal L. § 155.25, also a class A misdemeanor. Jaafar was sentenced to a one-year term of imprisonment in October 1995. A.R. at 261.

In December 1997, Jaafar was convicted after a jury trial of Bribery in the Second Degree in violation of N.Y. Penal L. § 200.00, a class D felony. He was sentenced to a term of imprisonment of three to six years. A.R. at 264.

When INS denied Jaafar's naturalization request on January 13, 1995, it stated that the basis for its decision was that when Jaafar failed to appear on June 14, 1994, he had been given fifteen days from June 15 to reopen his naturalization application, but he had not responded until December 28, 1994. His application was therefore denied for lack of prosecution. A.R. at 31; 8 C.F.R. § 335.5. Jaafar requested a hearing in February 1995, A.R. at 33, but it does not appear that a hearing was ever held.

On February 18, 1998, INS instituted removal proceedings against Jaafar by issuing a Notice to Appear. A.R. at 199, 266. INS issued an amended Notice to Appear on October 5, 1998, alleging that Jaafar was an alien who had been convicted of a crime involving moral turpitude, and of a crime relating to a controlled substance, and that he was therefore subject to removal pursuant to 8 U.S.C. § 1182(a)(2)(A)(i). A.R. at 101. The bases for these allegations were Jaafar's convictions of Criminal Possession of Marijuana in the Second Degree, Criminal Possession of Stolen Property in the Fourth Degree, and Petit Larceny.

INS subsequently held a removal hearing concerning Jaafar. Jaafar initially appeared *pro se* but eventually retained an attorney. On December 7, 1998, the IJ stated orally that based upon Jaafar's "accumulation of arrests and convictions," he found Jaafar to be an aggravated felon and therefore subject to removal. A.R. at 92. On February 12, 1999, the IJ issued a written order to that effect, stating that Jaafar had "admitted to the factual allegations set forth and contained in the Notice to Appear ...," and that he therefore found Jaafar to be an aggravated felon under 8 U.S.C. § 1101(a)(43)(G) (which de-

fines the term "aggravated felony" to include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year"), and therefore ineligible for relief. A.R. at 78.

Jaafar appealed from the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on May 24, 1999. The BIA stated that it agreed with the Third Circuit's holding in *United States v. Graham,* 169 F.3d 787 (3d Cir.), *cert. denied,* —— U.S.——, 120 S.Ct. 116, —— L.Ed.2d —— (1999), that a misdemeanor theft conviction for which the term of imprisonment is one year is an aggravated felony as that term is defined in § 1101(a)(43)(G). A.R. at 38.

On June 11, 1999, Jaafar filed a *pro se* "Motion to Reopen Based Upon New Evidence." A.R. at 17. He claimed that his guilty plea to the petit larceny charge had not been voluntary, and that he had been denied due process by the INS's failure to respond to his request for a hearing. A.R. at 17–18.

The IJ denied Jaafar's motion on June 22, 1999. In his order, the IJ cited his and the BIA's prior decisions, and added that "the alleged 'new' material is not reviewable by this court or the court is without jurisdiction to do so." A.R. at 16.

## PETITIONER'S CLAIMS

Jaafar alleges that INS violated his right to due process by failing to act on his request for a hearing regarding INS's January 13, 1995 denial of his naturalization request, and that he received ineffective assistance of counsel because his attorney failed to raise the due process issue or to explain to Jaafar that he could move in state court to vacate his petit larceny convictions. Neither of these claims provides a basis for relief.

The central issue here is whether Jaafar is in fact eligible for naturalization. In reviewing INS's determinations in that regard, the court applies a *de novo* standard,

and makes its own findings of fact and conclusions of law. 8 C.F.R. § 336.9(c).

Section 1429 of Title 8 provides that "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest . . . ." The burden of proof to establish eligibility for naturalization is on the person seeking naturalization. *Id.*

Jaafar clearly cannot carry that burden. There is no dispute that he is currently subject to a final finding of deportability based upon his criminal record.

■ Jaafar incorrectly states that his petit larceny conviction cannot constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). Citing *Aguirre v. I.N.S.,* 79 F.3d 315 (2d Cir.1996), Jaafar states that to constitute an aggravated felony, the offense must be a felony under *federal,* not state, law.

Petitioner's reliance on *Aguirre* is misplaced. In *Aguirre,* the Second Circuit deferred to the BIA's interpretation of § 1101(a)(43)(B), which includes within the definition of "aggravated felony" "illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code) . . . ." In a prior administrative decision, the BIA had interpreted this statute as excluding any state felony drug convictions that would not constitute a felony under federal law. The decision in which the BIA had reached that conclusion, however, *In re L–G–,* Interim Decision 3234 (BIA 1994), was based upon § 1101(a)(43)(B)'s express reference to specific federal drug statutes, and the specific language of those statutes.

Subsection (43)(B) is not at issue here, however. Jaafar's petit larceny conviction falls instead under subsection (43)(G), which makes an aggravated felony any "theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year . . . ." Unlike subsection (43)(B), sub-

section (43)(G) does not require that the theft offense be a felony under federal law. In fact, subsection (43) expressly states that "[t]he term ['aggravated felony'] applies to an offense described in this paragraph whether in violation of Federal *or* State law . . . ." (Emphasis added.) Since Jaafar was sentenced to a term of imprisonment of one year, his petit larceny conviction is an aggravated felony for purposes of § 1101(a)(43). *See Graham,* 169 F.3d at 790–91 (reference to "term of imprisonment" in § 1101(a)(43)(G) is to term actually imposed, regardless of statutory maximum or minimum).

■ An additional reason that petitioner is ineligible for relief is that to be eligible for naturalization, he must show that he "has been and still is a person of good moral character . . ." during the required statutory period. 8 U.S.C. § 1427(a)(3). Given Jaafar's continual brushes with the law, he is hardly in a position to establish that prerequisite. In fact, INS regulations specifically provide that an applicant "shall be found to lack good moral character . . ." if he has been convicted of an aggravated felony as defined in § 1101(a)(43) on or after November 29, 1990, or if he has "[v]iolated any law of the United States, any State, or any foreign country relating to a controlled substance, provided that the violation was not a single offense for simple possession of 30 grams or less of marijuana . . . ." 8 C.F.R. § 316.10(b)(1). The marijuana statute under which Jaafar was convicted, N.Y. Penal L. § 221.25, requires that the substance containing marijuana must weigh more than sixteen ounces, which is far greater than thirty grams.

Because he is plainly ineligible for naturalization, Jaafar cannot prevail on either his due process or ineffective assistance claims. In order to prevail on either, Jaafar would have to show that the alleged violations of his rights prejudiced him, that is, that they adversely affected the outcome of the prior proceedings. *Hartooni v. I.N.S.,* 21 F.3d 336, 340 (9th Cir.1994).

Clearly these alleged violations did not affect the ultimate outcome here, since Jaafar is not eligible for naturalization in any event.

■ Petitioner's claim that he would not have pleaded guilty in state court had he known the effect that could have on his naturalization proceedings fails for several reasons. First, it is the fact of conviction, not the underlying circumstances surrounding the conviction, that is to be considered in determining questions of removability. *Contreras v. Schiltgen,* 151 F.3d 906, 908 (9th Cir.1998) (habeas petitioner cannot collaterally attack state court conviction forming the basis for INS's detention of petitioner). Moreover, "an attorney's failure to advise a client that deportation is a possible consequence of a guilty plea does not constitute ineffective assistance of counsel." *United States v. Banda,* 1 F.3d 354, 355 (5th Cir.1993); *accord United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988); *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir. 1985); *United States v. Gavilan,* 761 F.2d 226, 228 (5th Cir.1985); *United States v. Santelises,* 509 F.2d 703, 704 (2d Cir.1975). A guilty plea is also not rendered involuntary by the defendant's lack of awareness that he might be subject to removal based upon his conviction. *Yearwood,* 863 F.2d at 8; *Santelises,* 509 F.2d at 704. Accordingly, petitioner's claims are without merit.

### CONCLUSION

Petitioner's petition for a writ of habeas corpus is dismissed. Petitioner's Motion Requesting Bond (Docket Item 5) is dismissed as moot.

Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant

to 28 U.S.C. § 2253 and Fed. R.App. P. 22(b), this court denies a certificate of probable cause. Finally, because it appears that any appeal would not be taken in good faith, leave to appeal *in forma pauperis* will be denied.

IT IS SO ORDERED.