**Jose Dimas SANTOS–GONZALEZ, Petitioner,**

v.

**Janet RENO etc., et alia, Respondents.**

No. CV–99–7073 (CPS).

United States District Court,
E.D. New York.

April 18, 2000.

Marguerite D. Cordice–Bayley, Law Offices of Marguerite D. Cordice–Bayley, Jackson Heights, NY, for Petitioner.

Scott Dunn, United States Attorney's Office, Civil Division, Brooklyn, NY, for Respondents.

## MEMORANDUM AND ORDER

SIFTON, Senior District Judge.

Petitioner Jose Dimas Santos–Gonzalez filed this habeas corpus petition with this Court on November 1, 1999, requesting a stay of deportation and challenging a decision of the Board of Immigration Appeals finding him ineligible for relief from deportation on humanitarian grounds under § 212(c) of the Immigration and Nationality Act ("INA"). Named as respondents are Janet Reno, Attorney General of the United States; Doris Meissner, Commissioner of the Immigration and Naturalization Service ("INS"); Edward McElroy, New York City District Director of the INS; John Doe District Director of the INS; and the INS and Department of Justice. Petitioner sought a temporary restraining order and preliminary injunction enjoining the government from deporting him pending a hearing on the merits of his petition, and an order to show cause why the petition should not be granted. The government has agreed to stay deportation pending a resolution of the petition on its merits.

For the reasons set forth below, the petition is granted, and the matter is remanded to the INS for proceedings consistent with this decision.

## BACKGROUND

The following facts are drawn from the verified petition and supporting affirmation, the bail application and supporting affirmation, and the declaration of Assistant United States Attorney Scott Dunn. Disputes are noted.

Petitioner entered the United States as a legal permanent resident in 1974 and has lived here ever since. He was born in the Dominican Republic on September 5, 1953, was admitted to the United States as a twenty-one year old student, and is now forty-six. Petitioner's wife, who is a Dominican citizen, resides in the United States and is currently undergoing chemotherapy for breast cancer. Petitioner has

no children and has three siblings living in the United States and two siblings in the Dominican Republic. Petitioner has worked and resided in Queens until his deportation detention, except when incarcerated.

Petitioner has been found deportable by respondents on the basis of one conviction in December 1986 for criminal sale of a controlled substance (heroin) in the fifth degree. Petitioner was also convicted in 1980 for criminal possession of a weapon.[1] He was sentenced to two to four years in prison and was released on or about December 7, 1988. Respondents have declined to consider his case for discretionary waiver of deportation pursuant to § 212(c) because of provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009. Congress passed both of the acts after petitioner committed the offense for which the INS seeks to deport him. Petitioner is currently subject to a final order of deportation and is in INS detention in Batavia, New York.

Petitioner was stopped by the police on June 19, 1998, on suspicion of entering the subway without paying.[2] The case was adjourned in contemplation of dismissal. However, petitioner was prosecuted as an absconder for violation of his parole imposed following his 1986 conviction.[3] He was incarcerated on the parole violation

until February 1999 and, while in custody, underwent treatment for substance abuse. Since his release by the state, he has been in INS custody. While in INS custody, he has been involved in a physical altercation involving a number of detainees.

On April 29, 1999, an immigration judge ordered petitioner removed [4] and deported to the Dominican Republic. The judge rejected petitioner's request for a hearing to obtain a discretionary waiver of deportation pursuant to § 212(c) of the Immigration and Naturalization Act, because that provision had been repealed before his application. The Board of Immigration Appeals ("BIA") affirmed the order of deportation against petitioner on October 8, 1999.

Section 212(c) of the INA entitled longtime legal permanent residents accused of crimes triggering deportation to a discretionary hearing for a waiver of deportation or exclusion. See 8 U.S.C. § 1182(c) (1994) (repealed 1996); Francis v. INS, 532 F.2d 268 (2d Cir.1976). The immigration judge's decision to grant the waiver depended on a weighing of many factors, including family ties with the United States, residence of long duration in this country, evidence of hardship to the individual and family if deportation were to occur, a history of employment, and proof of rehabilitation. See Mojica v. Reno, 970 F.Supp. 130, 137 (E.D.N.Y.1997). Section 212(c) created an entitlement only to a

---

1. The immigration judge mentions this nineteen-year-old conviction in passing, but the INS clearly based its order of removal on the drug trafficking conviction. It is undisputed that the drug conviction constitutes an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B) and, as such, renders petitioner deportable. See 8 U.S.C. § 1227(a)(2)(iii).

2. Such a charge of "turnstile jumping" qualifies as a crime of moral turpitude and can subject an alien to deportation. See Mojica v. Reno, 970 F.Supp. 130, 137 (E.D.N.Y.1997).

3. The parole violation was a failure to report in 1989, at the end of his parole for the 1986 conviction.

4. As noted below, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (1996), made substantial changes to the INA. Prior to the 1996 amendments, the law distinguished between deportation and exclusion proceedings. See 8 U.S.C. § 1252b (repealed 1996). IIRIRA combined the two proceedings into a new process called a "removal" proceeding. See 8 U.S.C. § 1229a; Henderson v. INS, 157 F.3d 106, 111 n. 5 (2d Cir.1998).

hearing and the exercise of discretion, not to immunity from deportation. *See id.*

Petitioner filed the instant petition with this Court on November 1, 1999. Petitioner was represented by counsel at all stages of the administrative proceedings and in the current action. On December 23, 1999, this Court denied petitioner's application to be released on bail pending the resolution of his petition.

## DISCUSSION

In 1996, Congress passed two laws that substantially revised immigration law and policy. Between them, the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") significantly increased the number of crimes for which an alien must be deported, *see* 8 U.S.C. § 1101(a)(43), stripped many lawful permanent resident aliens of the right to discretionary and humanitarian relief, *see id.* § 1229b(a), and attempted to strip the federal courts of any meaningful review of actions taken by the Executive in excluding or removing aliens from this country, *see id.* § 1252. AEDPA was signed into law on April 24, 1996, and IIRIRA was enacted on September 30, 1996.

■ IIRIRA provided transitional rules that were effective for all INS proceedings initiated between October 30, 1996, and May 31, 1997. *See* IIRIRA § 309, 110 Stat. at 3009–625; *Maria v. McElroy*, 68 F.Supp.2d 206, 214 (E.D.N.Y.1999). For removal proceedings begun after April 1, 1997, however, the permanent rules of IIRIRA are in effect. *See id.* Generally, removal proceedings are deemed commenced upon the issuance of the notice to appear, also called the order to show cause. *See Pena–Rosario v. Reno*, 83 F.Supp.2d 349, 362–63 (E.D.N.Y.2000); *Dunbar v. INS*, 64 F.Supp.2d 47, 52 (D.Conn.1999). In this case, petitioner's notice to appear is dated August 10, 1998, and the permanent rules of IIRIRA therefore apply.[5]

Petitioner raises two claims in support of his petition. First, he argues that, as both a constitutional matter and a matter of statutory construction, IIRIRA did not retroactively eliminate the right to a fairness hearing under § 212(c) of the INA. Second, petitioner argues that he is being denied equal protection because § 212(c), as amended, irrationally discriminates between deportable and excludable aliens.[6] Petitioner seeks an order (1) staying his deportation during the pendency of this action; (2) declaring that amendments made to § 212(c) by IIRIRA may not be applied retroactively to petitioner; (3) declaring § 212(c) as amended unconstitutional as applied in this case; (4) directing respondents to vacate his order of deportation; and (5) remanding the case to respondents with an order to conduct a hearing on the merits of the § 212(c) application.

Respondents argue that the petition should be dismissed because (1) the Court lacks subject matter jurisdiction and (2) the Court has no personal jurisdiction over the respondents. Respondents also oppose the petition on its merits, arguing that IIRIRA is explicitly retroactive and bars a discretionary cancellation of removal for petitioner.

5. Because of the initiation date of his removal proceedings, IIRIRA contains the relevant statutory provisions. Petitioner, however, focuses his argument on AEDPA rather than IIRIRA. Given this understandable confusion on the applicable law after the myriad 1996 amendments, transition rules, and resulting court opinions, this Court will construe petitioner's arguments as if he had cited IIRIRA instead of AEDPA.

6. I do not consider petitioner's equal protection claims below. Because this petition can be granted through a process of statutory construction, I will not decide the constitutional claims on the merits in the interest of avoiding unnecessary constitutional decisionmaking. *See, e.g., United States v. National Treasury Employees Union*, 513 U.S. 454, 478, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995).

*Subject Matter Jurisdiction*

■ Of necessity, the first question this Court must address is whether it has subject matter jurisdiction under 28 U.S.C. § 2241 to consider the instant petition. Respondents argue that this Court has no subject matter jurisdiction because IIRIRA repealed § 2241 jurisdiction in the district courts for challenges to INS actions.

■ The Second Circuit, however, has already rejected respondents' arguments and clearly held that the jurisdiction-stripping provisions of AEDPA and IIRIRA did not affect district courts' 28 U.S.C. § 2241 habeas jurisdiction over claims by removable aliens. *See Henderson v. INS*, 157 F.3d 106, 119 (2d Cir.1998); *Jean–Baptiste v. Reno*, 144 F.3d 212, 219–20 (2d Cir.1998); *Hincapie–Nieto v. I.N.S.*, 92 F.3d 27, 31 (2d Cir.1996); *Pena–Rosario*, 83 F.Supp.2d 349, 360–61. Two canons of statutory construction mandate this interpretation of the 1996 acts. First, repeals by implication of jurisdictional statutes, and particularly of habeas statutes, are disfavored. *See Henderson*, 157 F.3d at 119. Indeed, courts have adopted a clear statement requirement for the modification of habeas jurisdiction, so that "in the absence of language affirmatively and clearly eliminating habeas review, we presume Congress did not aim to bar federal courts' habeas jurisdiction pursuant to § 2241." *Jean–Baptiste*, 144 F.3d at 219; *see also Felker v. Turpin*, 518 U.S. 651, 661, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Second, this interpretation comports with the canon to avoid constitutional questions. *See, e.g., Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Specifically, district court retention of § 2241 jurisdiction in these cases avoids the "profound constitutional questions" that would be presented under the Suspension Clause, Article III, the Due Process Clause, and the Equal Protection Clause if the statutes were read to preclude all judicial review. *See Henderson*, 157 F.3d at 119.[7]

Nor does the Supreme Court's recent decision in *Reno v. American–Arab Anti–Discrimination Committee* ("*AADC*"), 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), compel a different result. In *AADC*, the Court held that 8 U.S.C. § 1252(g), a provision of IIRIRA, deprived federal courts of jurisdiction over an action that alleged that the INS had targeted certain individuals for deportation because of their affiliation with a politically unpopular group. *See* 119 S.Ct. at 943. Section 1252(g) provides that "no court shall have jurisdiction to hear any case or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Court, however, noted that § 1252(g) applied only to preclude judicial review of discretionary decisions by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. *See id.*[8] In fact,

7. Respondents argue that *Henderson* is inapposite because it turned on an AEDPA provision not at issue in this case. Upon comparison of the AEDPA and IIRIRA provisions implicated in *Henderson* and the instant case, however, I find that they are identical in purpose and effect. *See Pena–Rosario*, 83 F.Supp.2d 349, 259–360. AEDPA § 440(a) states that "[a]ny final order of deportation against an alien who is deportable by reason of having committed [*inter alia*, an aggravated felony] shall not be subject to review by any court." 110 Stat. at 1276. The analogous IIRIRA provision applicable to this case states that "notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [*inter alia*, an aggravated felony]." 8 U.S.C. § 1252(a)(2)(c). As such, *Henderson* is directly on point, and I am bound by its decision. I decline to ignore the Court of Appeals at the behest of respondents, who merely cite to decisions in other circuits that disagree with *Henderson*. *See, e.g., Richardson v. Reno*, 180 F.3d 1311 (11th Cir.1999).

8. It is true, as respondents note, that the Court did refer to another IIRIRA amendment, § 1252(b)(9), as a general "zipper"

Justice Scalia, for the Court, noted the conflict among the circuits regarding the existence of habeas review after IIRIRA, citing *Henderson. See id.* at 942 n. 7. The Court did not purport to resolve this conflict, and *Henderson* therefore remains binding. Accordingly, *AADC* is inapposite to the jurisdictional question at issue here.

Because IIRIRA never expressly refers to 28 U.S.C. § 2241, this Court finds that IIRIRA does not repeal habeas corpus jurisdiction by implication. Accordingly, this Court has subject matter jurisdiction over plaintiff's claims that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See Henderson*, 157 F.3d at 122; 28 U.S.C. § 2241.

### Personal Jurisdiction and Venue

Respondents argue that this Court has no personal jurisdiction over the named respondents because petitioner fails to name the proper custodian. The government also argues that venue is not proper in the Eastern District of New York and should be transferred to the Western District. Petitioner names as respondents the Attorney General, the Commissioner of the INS, the District Director of the INS for New York City, and "John Doe" District Director. Although petitioner does not specifically identify the "John Doe" District Director, it is clear from the petition that it refers to the District Director who has custody over petitioner. The "John Doe" therefore will be construed as the District Director for the district encompassing Buffalo, New York, where petitioner is currently detained.

In a habeas corpus proceeding under 28 U.S.C. § 2241, the appropriate forum is governed by two factors: (1) whether the court has personal jurisdiction over petitioner's custodians; and (2) whether petitioner satisfies traditional venue considerations. *See Mojica*, 970 F.Supp. at 165. A court has personal jurisdiction "so long as the custodian can be reached by service of process." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Henderson*, 157 F.3d at 122. Section 2243 of Title 28 requires the writ of habeas corpus to be directed to the "person having custody of the person detained," 28 U.S.C. § 2243, but does not indicate who the proper custodian is. The Second Circuit has held that a determination of who is the proper custodian depends "primarily upon who has power over the petitioner and . . . on the convenience of the parties and the court." *Henderson*, 157 F.3d at 122.

Traditionally, courts have treated the individual with day-to-day control over petitioner as the custodian for habeas purposes. *See id.* In this way, the district director of the district in which a petitioner is detained is a custodian and a proper respondent. *See, e.g., id.; Eltayeb v. Ingham*, 950 F.Supp. 95, 99–100 (S.D.N.Y. 1997).

The Second Circuit has yet to decide whether the Attorney General herself is a proper respondent under § 2241. *Henderson*, 157 F.3d at 124. In *Henderson*, the court noted that the Attorney General has express statutory control over all alien detainees and that her

clause for jurisdiction. *See AADC*, 119 S.Ct. at 943. Section 1252(b)(9) directs that

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order [by a court of appeals] under this section.

The Court's passing reference to § 1252(b)(9), however, is merely dicta and is inapposite to the question of habeas jurisdiction implicated in the present case. Indeed, this statutory provision only serves to highlight again the failure of IIRIRA to mention explicitly the habeas statute. *See Pena–Rosario*, 83 F.Supp.2d 349, 361. The failure to comply with the clear statement rule regarding the repeal of habeas jurisdiction could not be clearer.

unique role in immigration matters suggests that she may be a proper respondent. *See* 157 F.3d at 125–126. Moreover, Congress explicitly designated the Attorney General as the proper respondent in all petitions for review to the courts of appeals pursuant to 8 U.S.C. § 1252, as amended by IIRIRA. *See* 8 U.S.C. § 1252(b)(3)(A). At the same time, the court in *Henderson* also indicated that there were "strong arguments" against deeming the Attorney General to be a custodian. *See* 157 F.3d at 126.

In this case, because petitioner has named the District Director of Buffalo, New York, his primary custodian, as a respondent, there is no need to decide such difficult issues as whether the Attorney General is a proper respondent. I note, however, that, due to the "practical approach" favored by the case law and the broadening of the concept of "in custody," *Henderson,* 157 F.3d at 125, 124, many courts have found the Attorney General to be a proper respondent in immigration-related habeas cases, *see, e.g., Pena–Rosario,* 83 F.Supp.2d 349, 362; *Pottinger v. Reno,* 51 F.Supp.2d 349, 357 (E.D.N.Y. 1999); *Mojica,* 970 F.Supp. at 167; *Nwankwo v. Reno,* 828 F.Supp. 171, 176 (E.D.N.Y.1993).

Despite respondents' arguments to the contrary, proper service of process can, without question, be effected on the District Director in Buffalo. Rule 4(e)(1) of the Federal Rules of Civil Procedure allows for service of process on individuals in accordance with the laws of New York. The laws of New York establish jurisdiction over persons located within the state. *See Eltayeb,* 950 F.Supp. at 99; N.Y.C.P.L.R. § 301. This Court therefore has personal jurisdiction over petitioner's custodian.[9]

Respondents nevertheless argue that venue is not proper and should be transferred to the Western District of New

York. The habeas statute in question has no venue provision applicable to this case. *See* 28 U.S.C. § 2241. The Supreme Court has stated that courts should apply "traditional venue considerations" in a habeas proceeding where venue is not fixed by statute. *See Braden,* 410 U.S. at 493, 93 S.Ct. 1123. These traditional considerations include (1) where the material events occurred; (2) where records and witnesses pertinent to the claim are likely to be found; (3) the convenience of the forum for respondent and petitioner; and (4) the familiarity of the court with the applicable laws. *See id.* at 493–94, 93 S.Ct. 1123; *Mojica,* 970 F.Supp. at 167.

In this case, these factors compel a finding of venue in the Eastern District of New York. Until his detention, petitioner resided in Queens, and his wife still does. The initial notice to appear directed him to report to the INS detention center in East Elmhurst, New York. Presumably, witnesses and evidence necessary to establish his eligibility for 212(c) relief, which is petitioner's goal in this case, are located in the Eastern District. In addition, petitioner's counsel, who has expended extensive efforts on this matter in the Eastern District, is located in Queens. *See Mojica,* 970 F.Supp. at 168; *Yesil v. Reno,* 958 F.Supp. 828, 836 (S.D.N.Y.1997), *aff'd sub nom. Henderson v. INS,* 157 F.3d 106 (2d Cir.1998). By contrast, respondents are not prejudiced if they are required to litigate in this Court because they have traditionally been well-represented in this district and can litigate here as easily as in the Western District. *See Yesil,* 958 F.Supp. at 836. Furthermore, the issues underlying the petition have already been fully briefed to this Court, and "the predisposition in this Circuit to reach the merits of a dispute in service to judicial economy compel the assertion of jurisdiction by this Court, in this case." *Eltayeb,* 950 F.Supp. at 99 n. 6.

---

9. Respondents' lengthy discussion of New York's long-arm statute is completely inapposite since the District Director is located with-

in New York State. *See* N.Y.C.P.L.R. § 301 *et seq.*

Having determined that jurisdiction obtains and venue properly lies in this Court, I now turn to the merits of the petition.

### Retroactivity of AEDPA and IIRIRA

■ Respondents declined to consider petitioner's case for discretionary waiver of deportation pursuant to § 212(c) because of provisions of AEDPA and IIRIRA enacted in 1996. Under pre-AEDPA law in effect at the time that he committed the crime which rendered him deportable, petitioner would have been eligible for a fairness hearing under § 212(c) because he was a legal permanent resident with a domicile in the United States for at least seven consecutive years. *See* 8 U.S.C. § 1182(c) (1994) (repealed 1996). Under these old rules, a § 212(c) waiver was precluded only for a legal permanent resident who had committed an aggravated felony and who had served five years or more in prison for the crimes. *See Mojica*, 970 F.Supp. at 137.

Respondents argue that IIRIRA § 304, which repeals § 212(c) and replaces it with "cancellation of removal" relief in limited situations, applies to petitioner instead of the AEDPA provision at issue in *Henderson, Pottinger,* and *Maria*. IIRIRA § 304(b) repeals § 212(c) of the INA. IIRIRA § 304(a) replaces § 212(c) and precludes cancellation of removal relief for any alien who has been convicted of an aggravated felony, whether or not the alien was imprisoned for five years or more. *See* 8 U.S.C. § 1229b(a)(3). It is undisputed that petitioner has been convicted of an aggravated felony. Respondents argue that the changes to discretionary relief wrought by § 304(a) apply in this case because a subsequent section provides that § 304 shall take effect for any removal proceedings begun after April 1, 1997, and petitioner's removal proceedings were begun in August 1998. *See* IIRIRA § 309(a), 110 Stat. at 3009–625.

■ Absent clear evidence of congressional design to the contrary, however, the retroactive application of a statute where retroactivity would "attach[ ] new legal consequences to events completed before its enactment" is precluded. *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In this case, the application of § 304(a) for which respondents argue would clearly attach new legal consequences to actions taken before its enactment. *See Pena–Rosario,* 83 F.Supp.2d 349, 362. Petitioner is being deported on the basis of a 1986 conviction. Section 304(a), which took effect on April 1, 1997, bars petitioner from receiving discretionary relief from deportation. It precludes all "aggravated felons," which includes petitioner, from relief, whereas the previously applicable provisions only precluded aggravated felons who had been imprisoned for five years or more. Petitioner was imprisoned for two years and would have been eligible for relief under the pre-IIRIRA regime. *See Mojica,* 970 F.Supp. at 137.

The removal of the possibility of such relief is a "new legal consequence" that triggers protections against retroactivity. *See, e.g., Pena–Rosario,* 83 F.Supp.2d 349, 362; *Pottinger,* 51 F.Supp.2d at 363; *Mojica,* 970 F.Supp. at 179; *see also Goncalves v. Reno,* 144 F.3d 110, 128 (1st Cir.1998) (holding that retroactive application of AEDPA § 440(d), which similarly restricted discretionary relief, "takes away a form of relief that, while discretionary, is plainly substantive, and so implicates *Landgraf*'s presumption against retroactivity"); *Hincapie–Nieto,* 92 F.3d at 30 n. 2 (noting in dicta that § 212(c) is "arguably a substantive right"). Surveys of the INS' past behavior demonstrates that between 1989 and 1994 over one-half of those applying for 212(c) discretionary relief received it. *See Mojica,* 970 F.Supp. at 178. Moreover, under the discretionary standards applicable to granting the relief, petitioner appears to be precisely the type of lawful permanent resident who would typically benefit from the relief. The crime on the basis of which deportation is sought does not involve violence and was committed

over a decade ago. His removal would prove a hardship to his wife, given her condition. Petitioner is a long-time resident in this country, has an employment history, and has substantial family ties in this country.

Because of this strong presumption against retroactivity, *see Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483, the IIRIRA provisions in question cannot be afforded retroactive effect unless "Congress has clearly manifested its intent" to have them so applied, *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). A decision in this district applying the *Landgraf* doctrine to AEDPA and IIRIRA proves instructive. In *Maria v. McElroy,* 68 F.Supp.2d at 221, the court held that, because IIRIRA's expansion of the definition of "aggravated felony" was explicitly retroactive, it could be retrospectively applied so as to render petitioner deportable on the basis of a pre-IIRIRA conviction. However, the court also held that AEDPA's exclusion of aliens convicted of "aggravated felonies" from eligibility for discretionary relief from deportation could not be applied retroactively to petitioner, who was convicted prior to the enactment of AEDPA, in the absence of clear evidence of congressional intent that the statute was intended to have such retroactive application. *See Maria,* 68 F.Supp.2d at 226–29. That analysis applies in the present case.

The cancellation of removal relief provisions in IIRIRA, just like the AEDPA provisions at issue in *Pottinger* and *Maria,* contains no language mandating retroactivity. Section 304(a) itself creates cancellation of removal relief, and § 304(b) re-peals § 212(c) of the INA,[10] but neither subsection provides that its provisions will be retroactive. Nor does § 304 itself contain an effective date provision. *See* 110 Stat. at 3009–587 to –597. The effective date provision of the entire subtitle, § 309(a), provides that the subtitle which includes § 304 shall take effect on April 1, 1997.[11] However, language that a statute "shall take effect" on a certain date is in itself insufficient to effect retroactivity. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483.[12] Indeed, the Court has stated that the "instruction that the provisions are to 'take effect upon enactment' ... mean[s] that courts should evaluate each provision of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct." *Id.* Accordingly, courts must examine each provision in question to find explicit indications of retroactivity.

Other subsections of IIRIRA, with the notable exception of § 304, contain explicit statements that they are to be applied retroactively. *Cf. Henderson,* 157 F.3d at 129 (discussing the same deficiency in AEDPA § 440(d)). For example, IIRIRA § 321(b) provides that "[n]otwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph." 110 Stat. at 3009–628 (codified at 8 U.S.C. § 1101(a)(43)(G)). Section 321(c), entitled "Effective Date," adds: "The amendments made by this [aggravated felony] section shall apply to actions taken on or after the date of the enactment of this Act regardless of when the conviction occurred." *Id.*

**10.** Section 304(b) merely states that "Section 212(c) (8 U.S.C. 1182(c)) is repealed." 110 Stat. at 3009–597.

**11.** Section 309(a) provides that "this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act." IIRIRA § 309(a), 110 Stat. at 3009–625. The "date of

the enactment" was September 30, 1996. *See Henderson,* 157 F.3d at 117.

**12.** The Court held that a "statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf,* 511 U.S. at 257, 114 S.Ct. 1483.

"Actions taken" under § 321(c) include actions and decisions of the Attorney General in removal proceedings. *See Xiong v. INS*, 173 F.3d 601, 607 (7th Cir.1999); *Maria*, 68 F.Supp.2d at 220. In addition, IIRIRA § 306(c)(1) explicitly states that portions of 306(a)(2) (codified at 8 U.S.C. § 1252(g)), which limits judicial review of certain discretionary decisions and is discussed above in relation to *AADC*, "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA § 306(c)(1), 110 Stat. at 3009–612.

Congress' use of explicitly retroactive language in those parts of the bill and its failure to use any analogous language in the nearby and closely-related § 304 itself strongly indicate that Congress did not intend § 304 limitations on discretionary relief to apply retroactively. *See Henderson*, 157 F.3d at 129–30. The Supreme Court has specifically condoned the use of such negative implication analysis when determining a statute's temporal reach. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (using same analysis with AEDPA provisions); *Pottinger*, 51 F.Supp.2d at 358 (same). In any event, I cannot find that there is a *clear* congressional intent favoring retroactive effect of § 304. *See Pena–Rosario*, 83 F.Supp.2d 349, 362.

 Therefore, although one element of the discretionary relief provision, the definition of aggravated felony, operates retroactively, another element, that repealing the five-year imprisonment requirement, does not. *Cf. Maria*, 68 F.Supp.2d at 209 (reaching the same result with AEDPA § 440(d)). As stated by another district court that has refused to apply retroactively the IIRIRA provisions currently in question, "the operative event for determining whether ... the IIRIRA amendments should apply is the actual commission of the crime for which the petitioners now face deportation." *Dunbar v. INS*, 64 F.Supp.2d 47, 54 (D.Conn. 1999).[13] "Whether or not the operative conduct might have been different, the immigrant has a presumptive right to the imposition of only those consequences which could have attached at the time he committed his act." *Maria*, 68 F.Supp.2d at 229.

Accordingly, I find that these IIRIRA provisions upon which respondents rely do not satisfy the demand that Congress explicitly state that 212(c) discretionary relief is being retroactively eliminated.

CONCLUSION

For the reasons set forth above, petition is granted. Section 304(a) of IIRIRA, which bars legal permanent residents who have been convicted of certain crimes from seeking a discretionary waiver of deportation, and § 304(b), which repeals § 212(c) relief, may not be applied retroactively to petitioner. Respondents are directed to resume petitioner's deportation proceeding to adjudicate an application for a waiver of deportation pursuant to § 212(c) of the Immigration and Nationality Act without regard to section 440(d) of AEDPA or section 304 of IIRIRA in accordance with this opinion. The availability of a hearing shall not be affected by the current "aggregate limitation" on cancellation of removal relief. *See* 8 U.S.C. § 1229b(e); *Maria*, 68 F.Supp.2d at 236.

The Clerk is directed to remand the within action to the INS for further proceedings consistent with this decision and to furnish a filed copy of the within to all parties.

SO ORDERED.

---

**13.** The Court rejects any suggestion that the operative event is a conviction or guilty plea. Indeed, "[i]ndividuals are presumed to act against a backdrop of legal obligations. If they were not, there would be little problem with the retrospective application of many laws; there are likely to be few instances of an individual poring over a statute book before acting." *Pena–Rosario*, 83 F.Supp.2d 349, 365–66.